# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| DENNIS WAYNE STEPHENS, JR., <br><br> Plaintiff, <br><br> vs. <br><br> SAFERENT SOLUTIONS, LLC, <br><br> Defendant. | Civil Action No.: <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> **FCRA, 15 U.S.C. §1681** *et seq.* |

Dennis Wayne Stephens, Jr. ("Plaintiff" or "Mr. Stephens") by and through his counsel brings the following Complaint against SafeRent Solutions, LLC ("Defendant" or "SafeRent") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681, *et seq.*, arising out of a tenant screening report that Defendant published to Plaintiff's potential landlord, which falsely portrayed Plaintiff was previously evicted and a judgment debtor in relation to the same eviction.

## INTRODUCTION

1. This is an individual action for damages costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency ("CRA") that compiles and

maintains files on consumers on a nationwide basis. It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3. Defendant assembled and published an inaccurate tenant screening report to Plaintiff's prospective landlord, which included a civil eviction record and judgment that did not belong to Plaintiff.

4. In fact, Plaintiff has never been subject to a civil eviction action.

5. Nor has Plaintiff ever been evicted.

6. The record reported by Defendant *does not* belong to Plaintiff, rather it belongs to Plaintiff's father.

7. Plaintiff's prospective landlord denied Plaintiff's housing application after receiving the tenant screening report from Defendant, in which Defendant published the civil eviction record and judgment belonging to Plaintiff's father.

8. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records pertaining to the civil eviction records prior to publishing the information to Plaintiff's prospective landlord.

9. Defendant does not employ reasonable procedures to assure the

maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

10. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

11. Defendant's inaccurate report cost Plaintiff the ability to rent the house that was suitably accommodating of his needs, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

12. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; damage to his reputation; loss of sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

13. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. §1681e(b) of the FCRA.

## PARTIES

14. Dennis Wayne Stephens, Jr. ("Plaintiff" or "Mr. Stephens") is a natural person residing in Brevard County, Florida, and is a "consumer" as that term is defined in 15 U.S.C. §1681a(c).

15. Defendant SafeRent Solutions, LLC ("Defendant" or "SafeRent") is a Delaware corporation, formerly known as CoreLogic Rental Property Solutions, LLC, doing business throughout the United States, including the State of Florida and in this District, and has a principal place of business located at 3001 Hackberry Road, Irving, Texas 75063.

16. Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

17. Defendant is a consumer reporting agency as defined in 15 U.S.C. §1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

20. Enacted in 1970, the FCRA's passage was driven in party by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

21. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. §1681.

22. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C.

§1681e(b).

23. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

24. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one Defendant prepared in Plaintiff's name.

25. The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

26. In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§1681a(d) and (f).

27. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. §1681.

28. Under 15 U.S.C. §1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the

information concerning the individual about whom the report relates."

29. Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

## **DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

30. Over the past 15 years, there has been increased collection and aggregation of consumer data, including eviction and civil judgment records. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

31. Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

32. Tenant Screening companies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

33. Given that Defendant is in the business of selling tenant screening reports, Defendant should be well aware of the FCRA and the attendant harm to

consumers for reporting inaccurate or outdated information.

34. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

35. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

36. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

37. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting information belonging to another consumer.

## FACTS

**A. Plaintiff Applies for an Apartment with Mainstreet**

38. Plaintiff had been residing at an address in Cape Canaveral, Florida, but his lease was coming to an end, so Plaintiff began searching for alternative, and a more long-term and stable, place of residence.

39. Accordingly, in or around November 2022, Plaintiff began searching for housing in Brevard County, Florida. Specifically, Plaintiff was searching for a home that was in a safe neighborhood, clean, suitable, and within his budget.

40. Plaintiff knew that some of the nicer residential properties in the area were managed by Main Street Renewal ("Mainstreet").

41. Therefore, in or around November 2022, Plaintiff began searching for residential properties on the Mainstreet website.

42. Plaintiff discovered multiple suitable residential properties on the Mainstreet website, and he applied first for one such property, located on Beaverdale Lane in Rockledge, Florida, on or about December 1, 2022.

**B. Defendant Published an Inaccurate Tenant Screening Report to Mainstreet**

43. Mainstreet had contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent a home.

44. Therefore, in response to receiving a housing application from Plaintiff on or about December 1, 2022, Defendant sold a tenant screening report about Plaintiff to Mainstreet (the "SafeRent Report").

45. The SafeRent Report that Defendant published contained information concerning Plaintiff, including a compilation of Plaintiff's credit history, criminal

history, and civil records history.

46. The tenant screening portion of the SafeRent Report, identified by the report as "Registry Check Report," contained inaccurate information about Plaintiff.

47. Specifically, the "Evictions, Filings, & Public Records" section of the SafeRent Report included the following civil court record from Greenup County, Kentucky:

| REPORT SUMMARY | | | |
|---|---|---|---|
| Report ID: | 0065169671 | Status: | Completed |
| **COURT RECORDS ON FILE** | | | |
| RECORD - 1 of 1 | | | |
| **Defendant/Respondent Information** | | | |
| Name: | DENNIS W STEPHENS | SSN: | |
| Address: | ███████████ | | |
| **Plaintiff/Petitioner Information** | | | |
| Name: | FIRST AND PEOPLES BANK AND TRUST COMPANY | Phone: | |
| **Case Details** | | | |
| Case Number: | 19C00391 | Case Type: | LANDLORD/TENANT |
| Suits: | 08/12/2019 | Description: | JUDGMENT-POSSESSION ONLY |
| Claim Amount: | | Judgment Amount: | |
| File Date: | 08/02/2019 | | |
| Court: | GREENUP DIST CT | County: | GREENUP |

48. The civil eviction record and judgment published by Defendant about Plaintiff to Mainstreet *did not* belong to Plaintiff.

49. Defendant published inaccurate information about Plaintiff. The above-referenced information should not have been included in any tenant screening report about Plaintiff.

50. Specifically, it is indisputable that prior to furnishing the SafeRent Report to Mainstreet, Defendant failed to consult widely available public court records in Greenup County, Kentucky, which indicate that the aforementioned records do not belong to Plaintiff.

51. A cursory review of the widely available underlying public court records confirms that the records belong to an individual named Dennis Stephens, Sr. ("Plaintiff's Father"). Defendant's unreasonable or non-existent procedures allowed Defendant to publish a report about Plaintiff wherein Defendant mixed the housing and civil court history of Plaintiff's Father into that same SafeRent Report.

52. Had Defendant actually consulted or obtained the widely available underlying public court records, it would have seen the obvious discrepancies between Plaintiff's Father and Plaintiff.

53. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Plaintiff's Father include the following:

(a) Plaintiff's legal name is "Dennis Wayne Stephens, Jr." but the name of the individual subject to the civil eviction record and judgment is identified in the underlying public court records as Dennis W. Stephens;

(b) Plaintiff's date of birth, which was provided to Defendant prior to publishing the tenant screening report, is on a date in the

1990s, yet the underlying public court records indicate that Plaintiff's Father's date of birth is on a date in the 1960s.

(c) Plaintiff's address history confirms that he did not live at the address that was subject to the civil eviction record, 2906 Camellia Drive, Flatwoods, Kentucky 41139, at the time the landlord/tenant and summary process civil case was filed, purportedly in August of 2019; and,

(d) Plaintiff's Social Security number, which was provided to Defendant before it prepared its tenant screening report and is indicated on the face of the tenant screening report, is entirely different from that of Plaintiff's Father.

54. The sole reason the inaccurate civil eviction record and judgment were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

55. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing civil eviction record and judgment belong to Plaintiff's Father, who has a different suffix, a different date of birth, and a different Social Security Number, than Plaintiff.

56. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. §1681e(b).

C. **Mainstreet Denies Plaintiff's Housing Application**

57. On or about December 3, 2022, Plaintiff was notified by Mainstreet by email that his housing application was denied as a direct result of the civil eviction record and judgment reported by Defendant.

58. Shortly thereafter, Plaintiff obtained a copy of the tenant screening report and was shocked and humiliated upon reviewing and realizing that the civil eviction record and judgment of Plaintiff's Father were published in the SafeRent Report that Defendant sold about Plaintiff to Mainstreet.

59. Plaintiff contacted Mainstreet on December 4, 2022, and informed them that the civil eviction record and judgment did not belong to him. Further, that he has a different social security number and date of birth from that of the individual responsible for the same.

60. In response, Mainstreet expressed to Plaintiff that it could not remedy or alter its denial unless the SafeRent Report was revised, and directed Plaintiff to contact the consumer reporting agency that produced the report.

61. Plaintiff was very panicked, confused, and concerned about the

impact of the records of Plaintiff's Father being reported on the tenant screening report – specifically, the impact of the same on his future.

62. Plaintiff had urgently needed to leave his at-the-time place of residence because his lease was about to expire, and Mainstreet's denial of housing caused immense anxiety and distress.

63. Further distressing was that Defendant had matched Plaintiff and Plaintiff's Father and published the civil eviction record and judgment of Plaintiff's Father in the SafeRent Report about Plaintiff and sold that report to Plaintiff's prospective landlord, despite exculpatory public record information being widely available to Defendants prior to publishing the SafeRent Report.

**D.  Plaintiff Disputed the Misinformation in Defendant's Tenant Screening Report**

64. On December 4, 2022, desperate to secure housing with Mainstreet and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant by phone.

65. On the phone with Defendant, Plaintiff identified himself and provided information to Defendant to support his dispute.

66. Plaintiff specifically disputed the civil eviction record and judgment of Plaintiff's Father.

67. Plaintiff specifically stated that the civil eviction records and

judgment of Plaintiff's Father do not belong to Plaintiff.

68. Plaintiff specifically asked Defendant to investigate and delete Plaintiff's Father's records from any tenant screening report about Plaintiff.

69. Towards the end of December 2022, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and removed Plaintiff's Father's records from the SafeRent Report.

70. Defendant also communicated to Plaintiff that it had issued a corrected tenant screening report to Mainstreet.

71. However, SafeRent's corrective actions came too late.

72. Between December 3, 2022, and December 13, 2022, Plaintiff was frantically searching for other housing opportunities, causing Plaintiff much anxiety and stress. Throughout this time, Plaintiff feared that he would be left homeless and without anywhere to live.

73. On December 13, 2022, Plaintiff's lease expired, and Plaintiff, with nowhere to go, was forced to plead with a realtor for a short-term rental on an emergency basis until such time as he would find another place.

74. Put simply, SafeRent left Plaintiff stranded and homeless.

75. After a diligent search, one realtor, Petra Appling, found a temporarily vacant one-week rental and permitted Plaintiff to house himself there on an emergency basis, for which Plaintiff paid $1,292.96 dollars to Ms. Appling.

76. Further, Plaintiff desperately needed a storage unit in which to house his belongings. Accordingly, Plaintiff paid Cube Smart, a storage company, $170 dollars to rent a unit at its storage facility.

77. Needless to say, Plaintiff was forced to schlep, haul, and heave his belongings to the storage facility and into the storage unit.

78. Defendant's actions have caused Plaintiff to be stressed and distracted at work. Plaintiff works as an engineer with often unpredictable hours and non-fixed work schedule, which made his pursuing alternative housing opportunities, including visiting such opportunities, extremely taxing and difficult to manage.

79. On or about December 15, 2022, Plaintiff signed a lease for a new housing opportunity, and he was able to move in on December 20, 2022.

80. Upon information and belief, SafeRent revised and updated its consumer report concerning Plaintiff on or after December 20, 2022.

81. Defendant's false report cost Plaintiff a housing opportunity that met his needs, including affordability, safety, and proximity to work, friends, and family.

82. Plaintiff was looking forward to living at the home managed by Mainstreet on Beaverdale Lane because it was in a safe neighborhood, was near the major highways, his work and family, and was within his budget.

83. The injuries suffered by Plaintiff as a direct result of Defendant's

erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

84. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; damage to his reputation; loss of sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. §1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

85. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

86. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

87. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

88. At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. §1681a(d).

89. Defendant violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report it sold about Plaintiff as well as the information it published within the same.

90. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; damage to his reputation; loss of sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

91. Defendant willfully violated 15 U.S.C. §1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

92. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and/or §1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a) Determining that Defendant negligently and/or willfully violated the FCRA;

b) Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

c) Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

d) Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: February 17, 2023,        **CONSUMER ATTORNEYS PLC**

*/s/ Santiago Jorge Teran*
Santiago Jorge Teran
8245 North 85th Way
Scottsdale, AZ 85258
T: (305) 433-3252
E: steran@consumerattorneys.com

*Attorneys for Plaintiff*
*Dennis Wayne Stephens, Jr.*